**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| 7X CATTLE CO. LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 6:22-CV-00396-JDK-KNM |
| DANIEL BRANDSTADT, 3C FARMS, | § | |
| LLC, and PINEHURST PARTNERS I, | § | |
| LLC, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff/Counter-Defendant 7X Cattle Company, LLC's motion to dismiss Defendant/Counter-Plaintiff Daniel Brandstadt's counterclaims (Doc. 109). Defendant/Counter-Plaintiff Brandstadt has filed a response (Doc. 133) and a sur-reply (Doc. 140). 7X has filed a reply (Doc. 136). Having considered the parties' pleadings and the relevant law, the Court **RECOMMENDS** 7X's motion to dismiss (Doc. 109) be **GRANTED in part and DENIED in part**.

**BACKGROUND**

Brandstadt is 7X Cattle Company's former employee.[1] 7X alleges that during Brandstadt's last year of employment, co-defendant Pinehurst Partners paid Brandstadt to concurrently manage Pinehurst's ranch.[2] 7X states that this caused Brandstadt to neglect his job duties at 7X and that

---

[1] Doc. 87 at ¶ 1.
[2] Doc. 87 at ¶ 1.

7X's ranch operations materially suffered as a result.[3] Pinehurst allegedly paid Brandstadt through Brandstadt's LLC, 3C Farms.[4]

7X brings claims against Brandstadt, Pinehurst, and 3C Farms for breach of fiduciary duty, knowing participation in the breach of fiduciary duty, conversion, violations of the Texas Theft Liability Act, and interference with contract and employment relations.[5] Brandstadt (proceeding *pro se*) brings various counterclaims against 7X, which 7X now moves to dismiss.[6]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief, which includes a counterclaim, contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A party's counterclaims must set forth plausible, not merely possible, claims. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Under Rule 12(b)(6), a party can move for the dismissal of asserted claims for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation

---

[3] Doc. 87 at ¶ 1.
[4] Doc. 87 at ¶ 1.
[5] Doc. 87 at ¶ 2.
[6] This is not the first iteration of Brandstadt's counterclaims. On February 21, 2021, the Court dismissed Brandstadt's original counterclaims and granted him leave to amend. Doc. 84. Brandstadt filed his amended counterclaims on March 14, 2024. Doc. 85. 7X moved to dismiss Brandstadt's amended counterclaims. Doc. 89. Before the Court could rule on this motion to dismiss, 7X filed its Second Amended Complaint. Doc. 87. On April 19, 2024, Brandstadt filed his answer to 7X's Second Amended Complaint along with the counterclaims that are currently before the Court. Doc. 101.

omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Courts must construe the pleadings of *pro se* litigants liberally. *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). However, "such a liberal construction does not require that the Court or a defendant create causes of action where there are none." *Smith v. CVS Caremark Corp.*, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). Even with *pro se* litigants, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

## DISCUSSION

Brandstadt brings counterclaims against 7X that are labeled as follows: (1) defamation of character; (2) tortious interference; (3) hostile work environment/wrongful termination; and (4) emotional distress.[7] Texas law governs here. *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) ("A federal court sitting in diversity applies the substantive law of the forum state . . . .")

### I.    Defamation

To establish a prima facie case of defamation under Texas law, a plaintiff must demonstrate the following: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citations omitted); *see also Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006)

---

[7] Doc. 101.

(stating that defamation is "a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation" under Texas law). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (citation omitted). In addition, even if false, a statement is not actionable if "the entire context in which it was made discloses that it is merely an opinion masquerading as fact." *Id.* (citation omitted).

"While a claim for defamation is not subject to the heightened pleading requirements of Rule 9(b), the pleadings for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond." *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011). Specifically, "[t]o recover on such a claim, the plaintiff must identify the alleged defamatory statement and the speaker." *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007). Additionally, "[a] plaintiff generally must specify when and where the statement was published. Otherwise, the claim may be too vague to give adequate notice to the defendant of the claim he must contest." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1153 (5th Cir. 2021). Texas defamation claims are subject to a one-year statute of limitations. *Ameen*, 226 F. App'x at 370.

Brandstadt generally alleges that 7X made knowingly false statements that "impugn[ed] Defendant Brandstadt's honesty, integrity and professional abilities."[8] Brandstadt also states that "7X achieved such defamation of character through Gilbert Pepin, Fred Bennett, their private investigator John McSwain, and others seeking to find information other than the truth that they had already have [sic] been informed of and knew in great detail."[9]

---

[8] Doc. 101 at ¶ 1.
[9] Doc. 101 at ¶ 1.

7X argues that Brandstadt's defamation claim as written is too vague to give adequate notice to 7X of the claim it must contest. The Court agrees. Brandstadt does not quote or paraphrase any particular statement. He does not delineate which speaker made any particular statement. Additionally, as noted by the Fifth Circuit, a plaintiff generally must specify when and where the alleged defamatory statement was published to give adequate notice to the defendant of the claim he must contest; Brandstadt has not done so here. *See Mandawala*, 16 F.4th at 1153 (5th Cir. 2021).

Construing the complaint liberally, Brandstadt has not pleaded factual allegations that raise the right to relief above the speculative level. *See Stukes v. Nehls*, 614 F. App'x 792, 794 (5th Cir. 2015) (affirming dismissal of defamation claim that "fail[ed] to identify any specific defamatory statements" and "fail[ed] to squarely identify the speaker of the alleged defamatory statement").

Brandstadt's Response raises new factual allegations regarding a YouTube video that are not pleaded in his second amended counterclaims.[10] Generally, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021). However, the Fifth Circuit has held that where a plaintiff raises new claims in opposition to a dispositive motion, courts may construe the opposition as a motion for leave to amend the complaint to assert the new claims. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend).

The Court will not construe Brandstadt's response as a motion for leave to amend at this juncture. The deadline to amend pleadings without leave of Court in this case passed on March 29, 2024.[11] The Report and Recommendation issued on June 13, 2024, clearly stated that to the extent

---

[10] Doc. 133 at 1.
[11] Doc. 71.

Brandstadt wishes to add allegations regarding a YouTube video to his Second Amended Counterclaims, he should file a motion seeking leave of court to do so.[12] Brandstadt has not filed such a motion.

## II.    Tortious Interference

Brandstadt's second counterclaim alleges that 7X tortiously interfered with "business relationships and expectancies."[13]

To state a claim for tortious interference with prospective business relations, Brandstadt must allege:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

To the extent that Brandstadt instead intends to bring a claim for tortious interference with existing contractual relationships, that claim would require: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

7X argues that Brandstadt's interference claim should be dismissed because he has not pleaded facts to support any of the required elements for either claim.[14] Under the paragraph labeled "Tortious Interference," Brandstadt states that his "purpose and concern outside of

---

[12] Doc. 127 at 5.
[13] Doc. 101 at ¶ 2 (errors in original).
[14] Doc. 109 at 6.

supporting his family was providing a place for underprivileged youth to experience a wholesome and healthy lifestyle" and that "7X actively, viciously, and hatefully attacked and destroyed this positive environment and place for underprivileged youth."[15] Specifically, Brandstadt states that 7X "made obscene and hateful gestures and statements directed to the youth of color" and that 7X prevented Brandstadt from accessing "the property that [he] lived, worked and recreated on."[16]

Any claim that Brandstadt brings for tortious interference with existing and prospective business relationships should be dismissed because Brandstadt does not allege the existence of a specific contractual relationship that ended due to 7X's interference or a prospective business relationship that failed to develop due to 7X's interference. *See Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058, 2019 WL 2124677, at *4 (W.D. Tex. May 15, 2019) (dismissing tortious interference claims because Plaintiff did not identify any prospective contracts or existing business relationships with third parties that had been jeopardized by Defendant's actions). Brandstadt does not allege that any contractual relationship existed between himself and the "underprivileged youth," nor does not allege that there was a reasonable probability he would have entered into a contractual relationship with said youth.

As 7X points out in its motion to dismiss, to the extent Brandstadt is alleging that 7X interfered with its own employment relationship with Brandstadt or with 7X's own lease for the property Brandstadt was living on, this claim fails as a matter of law because "a party cannot tortiously interfere with its own contract." *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). Brandstadt's tortious interference claims should be dismissed.

---

[15] Doc. 101 at ¶ 2.
[16] Doc. 101 at ¶ 2.

### III.    Hostile Work Environment/Wrongful Termination

Brandstadt's third counterclaim is labeled "Hostile Work Environment, Wrongful Termination."[17] Under this heading, Brandstadt alleges that "[7X] forced [Brandstadt] to quit by using undue pressure and lack of good cause to improperly motivate [Brandstadt] to resign."[18] Brandstadt's general assertion is that he was forced to resign so that 7X would have a "straw man" to blame their failures on.[19]

Under Texas law, the employment-at-will doctrine governs unless there is an employment contract to the contrary. *County of Dallas v. Wiland,* 216 S.W.3d 344, 347 (Tex. 2007). Under the employment-at-will doctrine, "employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). The Texas Legislature has carved out several exceptions to the employment-at-will doctrine. *Winters v. Houston Chron. Pub. Co.*, 795 S.W.2d 723, 724 (Tex. 1990) (listing statutory limitations to the doctrine). In the same vein, the Supreme Court of Texas has created limited judicial exceptions to the employment-at-will doctrine. For example, an employee may sue for damages if he was discharged solely for refusing to perform an illegal act. *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985).

Brandstadt does not allege that he had any employment contract with 7X. He does not plead any recognized exception to the employment-at-will doctrine or cite to any specific statute that his claim arises under. His claim labeled "Hostile Work Environment, Wrongful Termination" should be dismissed.

---

[17] Doc. 101 at ¶ 3.
[18] Doc. 101 at ¶ 3.
[19] Doc. 101 at ¶ 3.

To the extent that Brandstadt's use of the term "hostile work environment" is an attempt to invoke the protections of Title VII or the Texas Commission on Human Rights Act ("TCHRA"), these statutes apply to discrimination based on a protected characteristic.[20] Brandstadt has not pleaded that he is a member of a protected class, and any claim arising under those statutes should be dismissed. It is also possible that, in using the term "hostile work environment," Brandstadt is attempting to bring a claim for intentional infliction of emotional distress. This claim will be discussed further below.

### IV.    Emotional Distress

The final paragraph of Brandstadt's complaint is labeled "Emotional distress."[21] Brandstadt alleges that 7X caused him "unbearable emotional distress by their extreme and outrageous misconduct in the workplace, forcing wrongful termination and by their continuous attacks and false accusations against Brandstadt after his resignation."[22] Given Brandstadt's *pro se* status, the Court will construe this paragraph as a counterclaim for intentional infliction of emotional distress ("IIED").

Under Texas Law, the elements of IIED are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). To be actionable, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

---

[20] Pursuant to Title VII, an employer may not discriminate against its employees or potential employees because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Likewise, under the TCHRA, an employer "commits an unlawful employment practice if, because of race, color, disability, religion, sex, national origin, or age, the employer discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE ANN. § 21.051(1).
[21] Doc. 101 at ¶ 4.
[22] Doc. 101 at ¶ 4.

"Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Id*.

An employer can be held liable for its employee's intentional infliction of emotional distress in certain circumstances. *See GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999). The Texas Supreme Court has "declined to recognize intentional infliction of emotional distress claims for 'ordinary employment disputes,' emphasizing that extreme conduct in this context 'exists only in the most unusual of circumstances.'" *Texas Farm Bureau Mut. Ins. Companies v. Sears*, 84 S.W.3d 604, 611 (Tex. 2002) (compiling cases). Under Texas law, an action for intentional infliction of emotional distress lies only when the conduct "brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *Bruce*, 998 S.W.2d at 613 (citation omitted).

7X moves for dismissal of Brandstadt's IIED claim on two grounds: 1) because his allegations are conclusory; and 2) because he does not adequately plead that his utilities being cut off caused him emotional distress.[23]

As to 7X's first ground for dismissal, the Court does not find that Brandstadt's allegations are too conclusory to support a claim for IIED.[24] Brandstadt describes Pepin, his 7X supervisor, as "having angry fits, throwing things, cussing, demeaning employees, [and] in essence treating them as trash."[25] Brandstadt also alleges that Pepin "[cut] off Brandstadt's utilities to the house where he and his family resided with their animals, attempting to euthanize or run Brandstadt away."[26] A jury could plausibly find this conduct demonstrates the "extreme and outrageous"

---

[23] Doc. 101 at 9–10.
[24] Doc. 101 at 9.
[25] Doc. 101 at ¶ 3.
[26] Doc. 101 at ¶ 4.

standard required for an IIED claim. *See Bruce*, 998 S.W.2d at 617 (holding that acts amounting to a course of conduct of "harassment, intimidation, and humiliation" plus "daily obscene and vulgar behavior" meet the standard).

Severe emotional distress does not include mere worry, anxiety, vexation, embarrassment or anger. *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App. 1994). But here, Brandstadt alleges more than "worry." He claims that these actions caused him "agony," "extreme mental anguish," and "physical manifestations and illness."[27] Brandstadt pleads enough facts to survive 7X's motion to dismiss, especially given his *pro se* status.

7X next argues that Brandstadt's IIED claim should be dismissed because Brandstadt does not adequately allege that Pepin cutting his utilities off is what caused his emotional distress.[28] 7X points to a portion of Brandstadt's complaint in which he states that his emotional distress was caused by 7X's "lies and greed," and 7X seems to argue that Pepin's conduct does not fall under the category of "lies and greed."[29] Reading the complaint as a whole and construing it liberally, Brandstadt has adequately pleaded that Pepin's behavior proximately caused his emotional distress. It is not the case that Brandstadt *only* alleges 7X caused him emotional distress through "lies and greed." Brandstadt also states that 7X "caused [him] unbearable emotional distress by their extreme and outrageous misconduct in the workplace."[30] And, as stated above, he describes that alleged workplace misconduct in detail.[31]

At this preliminary stage, Brandstadt has successfully pleaded that Pepin acted intentionally or recklessly; his conduct was extreme or outrageous; his actions caused Brandstadt

---

[27] Doc. 101 at ¶ 4.
[28] Doc. 109 at 9.
[29] Doc. 109 at 9.
[30] Doc. 101 at ¶ 4.
[31] Doc. 101 at ¶ 4.

emotional distress; and Brandstadt's emotional distress was severe. Brandstadt has stated a claim for intentional infliction of emotional distress, and 7X's motion to dismiss is denied as to this counterclaim.

### V.   Request for Attorney's Fees

7X moves to strike Brandstadt's request for attorney's fees because he is proceeding *pro se* and because he has not alleged the existence of any contract that permits fee shifting or asserted a claim under a statute authorizing fee shifting.[32] Texas law allows a party to recover attorney's fees when a statute or contract provides. *In re Velazquez,* 660 F.3d 893, 895–96 (5th Cir.2011); *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex. 2006). "Generally, attorney's fees are not recoverable in an action for tort." *Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (citing *New Amsterdam Cas. Co. v. Texas Indus.,* 414 S.W.2d 914, 915 (Tex.1967)). Brandstadt's surviving IIED claim sounds in tort. Brandstadt has not cited to a statute that would permit recovery of attorney's fees as an element of damages for this claim. *See Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (dismissing cause of action for attorney's fees because Plaintiff's causes of action all sounded in tort). Brandstadt's request for attorney's fees should be stricken.

### CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that 7X's Motion to Dismiss (Doc. 109) be **GRANTED in part and DENIED in part**. Brandstadt's claims for defamation, tortious interference, hostile work environment, and wrongful termination should be dismissed with prejudice. Brandstadt's response and sur-reply give no indication that he could fix the pleading deficiencies present in his second amended counterclaims if permitted to file third amended

---

[32] Doc. 109 at 10.

counterclaims. The Court notified Brandstadt in its June 13, 2024, Report and Recommendation that, to the extent he wished to amend his pleadings to add allegations regarding a YouTube video, he needed to file a motion seeking leave of Court to do so.[33] Brandstadt has not requested leave to amend his counterclaims.

The Court also recommends that Brandstadt's request for attorneys' fees be stricken.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 22nd day of July, 2024.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[33] Doc. 127 at 5 (noting that the deadline to amend pleadings without leave of court expired on March 29, 2024).